**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| THEODORE L. LUCKEY, JR., | : | |
| Plaintiff, | : | Civil Action No. 11-5649 (JAP) |
| v. | : | |
| SGT. MARTIN, et al., | : | **OPINION** |
| Defendants. | : | |

**Pisano**, District Judge:

Theodore L. Luckey, Jr. ("Plaintiff") submitted to the Clerk a pro se complaint ("Complaint"), see Docket Entry No. 1, accompanied by his application to proceed in this matter in forma pauperis.[1]

This Court will grant Plaintiff's application to proceed in forma pauperis, direct the Clerk to file the Complaint and, for the reasons detailed below, will dismiss the Complaint, with prejudice, for failure to state a claim.

---

[1] Plaintiff was convicted of sexual assault of an under-age victim on September 9, 2004, and sentenced to a period of four years of confinement with no mandatory minimum. See <<https://www6.state.nj.us/DOC_Inmate/details?x=1240385&n=0>>. Plaintiff was, seemingly, released from his latest place of confinement at the end of September 2011. See Docket Entry No. 1-1, at 2. However, Plaintiff designated his address as "120 Hooper Ave Toms River, NJ 08753," which is the address of the Ocean County Sheriff's Office. See <<http://www.co.ocean.nj.us/>>. Out of abundance of caution, this Court will presume that Plaintiff is still in confinement and will accept Plaintiff's institutional account statement. In light of Plaintiff's status as either civilly confined individual or an individual released from confinement, the Court will not direct the collection of a filing fee.

I. **BACKGROUND**

Plaintiff's Complaint names five Defendants: "Sgt. Martin," "Sgt. Stella," "Classification Internal Affairs," "Sgt. Remondelli" and "Sgt. Hagen." See Docket Entry No. 1, at 1.[2] As to "Sgt. Martin," Plaintiff asserts that this Defendant violated his rights, stating that: (a) "because of [Plaintiff's] sexuality,[3] [Sgt. Martin] instructed other officers to bring a screen up from [the] Medical [Department] and place it in front of [Plaintiff's] cell [since] guys were shirtless in the day room," and, in addition, because "Sgt. Martin" "also called [Plaintiff] Miss Luckey." Id. at 3-4. As to "Sgt. Stella," Plaintiff asserts that this Defendant violated his rights, stating that, "because of [Plaintiff's] sexuality, [Sgt. Stella] yell[ed] out loud to other inmates that[,] because [Plaintiff] doesn't like women, none of these pic[ture]s of women should be up [and Sgt. Stella] proceeded to rip every picture off every inmate[']s door that contained women, which made the inmates angry at [Plaintiff]." Id. at 4. Plaintiff also states that he wrote grievances that threatened the Office of "Internal Affairs" and the Office of "Classification" that he would press charges against "Sgt. Martin" and "Sgt. Stella," but his grievances were denied, see id.; on the basis of these assertions, Plaintiff names these two Offices as Defendants in this matter. See id. Plaintiff also alleges that the Classification Office "kn[ew] very well that [Plaintiff] ha[d] issues with Bloods because [Plaintiff] wore a wire on a member for a murder case [but] still housed [Plaintiff] on a tier with Bloods who want[ed] to beat [Plaintiff] or cause other harm to [Plaintiff]." Id. at 5.

---

[2] It appears that "Martin" and "Stella" are the first, rather than the last, names of "Sgt. Martin" and "Sgt. Stella" Defendants.

[3] The Court construes Plaintiff's numerous references to his sexuality as a statement that Plaintiff is openly homosexual.

2

The Complaint is silent as to the alleged wrongs committed by "Sgt. Remondelli" and "Sgt. Hagen." See generally, Docket Entry No. 1. However, Plaintiff's allegations against all Defendants unambiguously indicate that the basis for Plaintiff's reference to "Sgt. Remondelli" and "Sgt. Hagen" is the same as that asserted against Defendants "Sgt. Martin," "Sgt. Stella" and "Classification Internal Affairs." See Docket Entry No. 1-1, at 2.

## II.   STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court to review a complaint in a civil action in which a prisoner seeks redress against a governmental employee or entity. See 28 U.S.C. § 1915A(a). The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b).

Ashcroft v. Iqbal, 556 U.S. 662 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[4] which was previously applied to determine if a federal complaint stated a claim. See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). To survive dismissal under Iqbal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Iqbal, 129 S. Ct. at 1949 (citation omitted). The plausibility standard "asks for more than a sheer

---

[4] The Conley Court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and will be dismissed.  Id. (citations and internal quotation marks omitted).  The Third Circuit instructs that, to determine the sufficiency of a complaint under the pleading regime established by Iqbal,

> a court must take three steps: First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947.  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 1950.  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Id.

Santiago v. Warminster Township, 629 F. 3d 121, 130 (3d Cir. 2010); see also Fowler v. UPMC Shadyside, 578 F.3d at 210-211 ("a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts").

### III.  DISCUSSION

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to state a claim of liability.  See Iqbal, 129 S Ct. at 1947-48.  Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law.  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

This Court reads the Complaint as attempting to assert the following claims under § 1983: (a) violation of Plaintiff's Due Process Clause rights by verbal harassment; (b) violation of Plaintiff's Due Process Clause rights by placement of a screen in from of his cell; (c) violation of Plaintiff's Due Process Clause rights by denial of his grievance; (d) violation of Plaintiff's rights by ripping down posters from doors on other cells; (e) violation of Plaintiff's Due Process Clause rights by failing to protect him from certain dangers; and (f) violation of Plaintiff's Equal Protection Clause rights by treating Plaintiff differently because of his sexual orientation.

### A.   DUE PROCESS CLAUSE CHALLENGES

Because it appears that Plaintiff was confined as a civilly committed individual, the Court examines Plaintiff's allegations under the test applicable to Fourteenth Amendment Due Process claims.  Generally, "the Due Process rights of a [confined individual] are at least as great as the Eighth Amendment protections available to a convicted prisoner," Reynolds v. Wagner, 128 F.3d 166, 173 (3d Cir. 1997) (citation omitted); see also Bell v. Wolfish, 441 U.S. 520, 544 (1979); City of Revere v. Massachusetts, 463 U.S. 239, 244 (1983), accord Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (quoting City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983)), and the Eighth Amendment sets forth the floor for the standard applicable to the claims of such litigants.  See Bell, 441 U.S. at 544.  Thus, a failure of prison officials to provide minimally civil conditions of confinement to such individuals violates their

right not to be punished without due process of law. See Reynolds, 128 F.3d at 173-74; Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 345-46, n.31 (3d Cir. 1987); see also Estelle v. Gamble, 429 U.S. 97, 104 (1976); Farmer v. Brennan, 511 U.S. 825 (1994).[5]

### 1.     Allegations Based on Verbal Harassment

Acts of verbal harassment alone cannot qualify as constitutional violations. See Stepney v. Gilliard, 2005 U.S. Dist. LEXIS 31889, at *19 (D.N.J. Dec. 8, 2005) ("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms. 'Verbal harassment or profanity alone . . . no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998)); see also Robinson v. Taylor, 2005 U.S. Dist. LEXIS 20951, at *8-9 (D. Del. Sept. 26, 2005) ("[M]ere verbal harassment does not give rise to a constitutional violation[; even if it is] inexcusable and offensive, [it] do[es] not establish liability under section 1983) (quoting McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001)); Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997); Abuhouran v. Acker, 2005 U.S. Dist. LEXIS 12864, at *15 (E.D. Pa. June 29, 2005) ("It is well established . . . that . . . verbal

---

[5] However, while the Third Circuit has generally maintained that an involuntarily committed patient's interests are to be balanced against the state's interest in maintaining order, as expounded on in Youngberg v. Romeo, 457 U.S. 307 (1982), see, e.g., Halderman v. Pennhurst State School & Hosp., 707 F.2d 702 (3d Cir. 1983), the Third Circuit has extended the standard enunciated in Sandin v. Conner, 515 U.S. 472 (1995), to certain group of civil commitment challenges. For instance, in Deavers v. Santiago, the Court of Appeals held, inter alia, that Sandin applies to a convicted sex offender civilly committed to an institution run by the NJ DHS pursuant to the Sexually Violent Predator Act. See 243 Fed. App'x 719 (3d Cir. 2007); accord Rivera v. Rogers, 224 Fed. App'x 148 (3d Cir. 2007).

harassment, . . . standing alone, do[es] not state a constitutional claim"). Thus, because Plaintiff's various allegations of verbal harassment, however severe and reprehensible they may have been, were unaccompanied by physical acts against Plaintiff's person, they are subject to dismissal at this time.

### 2. Allegations Based on Placement of a Screen

Under the Due Process Clause, an inmate can challenge the conditions of his confinement if the state "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest); see also Asquith v. Department of Corrections, 186 F.3d 407, 411-12 (3d Cir. 1999) (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest). In Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge.

Here, Plaintiff asserts that his rights were violated because a screen was placed in front of his cell door facing the day room, and thus Plaintiff's view of other inmates was obstructed. However, Plaintiff has no constitutional right in viewing other inmates, and placement of a screen in front of one's cell door cannot impose "atypical and significant hardship" of constitutional

7

magnitude. Sandin, 515 U.S. at 484. Therefore, Plaintiff's challenges based on the allegation that a screen was placed in front of his cell door are subject to dismissal.[6]

### 3. Allegations Based on Denial of Grievances

Plaintiff's next line of claims assert displeasure with the Office of Internal Affairs and the Classification Office (arms of the New Jersey Department of Corrections ("DOC")), alleging that these entities denied Plaintiff's grievances, even though Plaintiff tried to prompt disciplinary punishment of "prison officials by threatening to institute a court proceeding."

At the outset, the Court notes that neither the "Office of Internal Affairs" nor the "Classification Office" is a cognizable defendant for purposes of Plaintiff's § 1983 claims, as the DOC is not a "person" within the meaning of a § 1983 suit, see Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989); Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989); see also Marsden v. Federal BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994); Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (E.D. Pa. 1976), and no arm of the DOC is a "person" within the meaning of a § 1983 suit. See Will, 491 U.S. at 71 (state agencies are considered to be "arms" of the state that are not "persons" subject to suit under § 1983).

Moreover, even if the Court were to overlook this shortcoming of Plaintiff's pleading and construe Plaintiff's challenges based on denial of his grievances as claims asserted against specific individuals employed at the "Office of Internal Affairs" or the "Classification Office," Plaintiff's claims are facially meritless.

---

[6]To the extent Plaintiff's claim asserts discrimination on the basis of his sexual orientation, the Court will address that argument below.

To establish a Due Process claim under the Fourteenth Amendment, Plaintiff must demonstrate: (a) the existence of a constitutionally protected liberty or property interest; and (b) constitutionally deficient procedures by the state in its deprivation of that interest.  See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972).  If there is no protected interest, there is no need to determine whether the alleged deprivation was without due process.  See Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).

It is well-settled that prisoners have no constitutional right to a grievance process, and a prison official's denial of an inmate's grievance does not constitute a due process violation.  See Burnside v. Moser, 138 Fed. App'x 414, 415 (3d Cir. 2005) (holding that a "state grievance procedure does not confer any substantive constitutional rights upon prison inmates"); Jackson v. Beard, 2008 U.S. Dist. LEXIS 25799 (E.D. Pa. Mar. 31, 2008) ("inmate grievance procedures in themselves do not confer a liberty interest protected by the Due Process Clause"); Thibodeau v. Watts, 2006 U.S. Dist. LEXIS 3048 (M.D. Pa. Jan. 6, 2006) ("Because a prison grievance procedure does not confer any substantive constitutional right upon prison inmates, prison officials' failure to comply with the grievance procedure is not actionable"); see also Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997); McGuire v. Forr, 1996 U.S. Dist. LEXIS 3418 (E.D. Pa. Mar. 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996); accord Stringer v. Bureau of Prisons, 145 Fed. App'x 751, 753 (3d Cir. 2005) (citing Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996)).  Therefore, Plaintiff's allegations that his grievances were denied fail to assert a constitutionally cognizable challenge.

    **B.**    **ALLEGATIONS AS TO THE POSTERS**

Based upon Plaintiff's pleadings, it appears that he alleges that there were posters depicting women on the cell doors of other inmates at the facility where Plaintiff was confined. He alleges that Defendant "Sgt. Stella" ripped down these posters, causing the inmates to express displeasure.

To the extent Plaintiff's challenges could be construed as claims asserted on behalf of the inmates whose posters were allegedly ripped down, Plaintiff lacks standing to raise these challenges. See Whitmore v. Arkansas, 495 U.S. 149, 163-64 (1990) (explaining that to stand in for another as plaintiff, the purported plaintiff must among other things provide an adequate explanation – such as inaccessibility, mental incompetence, or other disability – why the real party in interest cannot appear on his own behalf to prosecute the action). Likewise, to the extent that Plaintiff alleges that his rights were somehow violated by the removal of the posters from these other inmates' cell doors, he fails to state a constitutional claim.[7] Finally, to the extent that Plaintiff's claims are based upon threats that resulted from the disappointment experienced by other inmates upon removal of these posters, Plaintiff's allegations are indistinguishable, substantively, from Plaintiff's other failure-to-protect claims, which – as the discussion provided below demonstrates – are subject to dismissal.

---

[7] To the extent Plaintiff claims that his own poster(s) was/were ripped down, his claim fails as a matter of law because the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 et seq., provides all the process that is due. The NJTCA provides an adequate post-deprivation judicial remedy to persons, including inmates such as Plaintiff, who believe they were wrongfully deprived of property at the hands of prison or jail officials. See Holman v. Hilton, 712 F.2d 854, 857 (3d Cir. 1983); Asquith v. Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J. 1998), aff'd, 186 F.3d 407 (3d Cir. 1999). Because the NJTCA is an available post-deprivation remedy providing all the process which is due, Plaintiff's due process claim regarding the loss of his poster(s), if any, fails.

    C.    **FAILURE-TO-PROTECT ALLEGATIONS**

Plaintiff also appears to assert two lines of "failure-to-protect" claims: (a) he alleges that he was improperly housed on the floor where some members of the "Bloods" gang were housed, and that such housing arrangement could have, hypothetically, been dangerous to Plaintiff, since he asserts that he assisted officials in collecting evidence against some member of the "Bloods" gang; and (b) Plaintiff maintains that the inmates disappointed with removal of posters depicting women might have gotten so angry with Plaintiff that they could have, hypothetically, harmed Plaintiff in some way. See, generally, Docket Entry No. 1.

Both aspects of Plaintiff's "failure-to-protect" claim are facially without merit. Under the deliberate indifference standard, officers and prison officials have a duty "to take reasonable measures to protect prisoners from violence at the hands of other prisoners." Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (citations and internal quotations omitted); see also Burton v. Kindle, 401 Fed. App'x 635, 637-38 (3d Cir. 2010) (the same deliberate indifference standard applies to failure to protect claims under either the Eighth Amendment or Fourteenth Amendment). For a failure-to-protect claim, Plaintiff must provide evidence establishing that: (a) "the conditions in which he was detained entailed a sufficiently serious risk of harm"; (2) the Defendants acted with "deliberate indifference" to his health and safety; and (3) causation, i.e., a showing that Plaintiff was harmed or was in an imminent danger of harm as a result of such deliberate indifference. See Farmer v. Brennan, 511 U.S. at 834; Hamilton, 117 F.3d at 746. In contrast, speculative failure-to-protect claims, asserting a purely "theoretical" / "hypothetical" danger set forth a scenario to which prison officials cannot, by definition, be deliberately indifferent. See Rouse v. Pauliilo, 2006 U.S. Dist. LEXIS 17225 (D.N.J. Apr. 5, 2006) (dismissing speculative

failure-to-protect claim and citing Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999)); Pilkey v. Lappin, 2006 U.S. Dist. LEXIS 44418, at *45 (D.N.J. June 26, 2006) ("Plaintiff's [anxiety paraphrased as his claim of] potentially diminished safety fail[s] to state a claim upon which relief may be granted"); Patterson v. Lilley, 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20, 2003) (defendants could only be held deliberately indifferent to an existing condition, not a speculative future injury).

Here, even assuming that Plaintiff was experiencing anxiety and believed that he might be in danger, his own subjective, fears cannot serve as a basis for a valid constitutional claim. Indeed, in the absence of a showing of deliberate indifference by the Defendants and harm or imminent danger of harm to Plaintiff, his claim cannot proceed and is subject to dismissal at this time. See, e.g., id.

     **D.     EQUAL PROTECTION ALLEGATIONS**

Plaintiff's challenges are largely based upon allegations relating to (a) the teasing and offensive comments he allegedly endured from the prison officers; and (b) the placement of a screen between his cell and the "day room" where other inmates were spending time while being shirtless, both allegedly based upon Plaintiff's sexual orientation.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Clerburne v. Clerburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). Thus, to state a claim under the Equal Protection Clause, a litigant must allege that: (a) he is a member of a protected class; and (b) he was treated differently from similarly situated inmates. See City of

Cleburne, 473 U.S. at 439.  If the litigant does not claim membership in a protected class, he must allege arbitrary and intentional discrimination in order to state an equal protection claim.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Specifically, he must state facts showing that: "(1) the defendant[s] treated him differently from others similarly situated, (2) the defendant[s] did so intentionally, and (3) there was no rational basis for the difference in treatment."  Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).

As a threshold matter, the Supreme Court has not recognized sexual orientation as a suspect class, and federal courts across the country have declined to identify homosexuals as a protected class.  See Price-Cornelison v. Brooks, 524 F.3d 1103, 1113 n.9 (10th Cir. 2008) (collecting cases); see also Wrightson v. Pizza Hut of Amer., Inc., 99 F.3d 138, 143 (4th Cir. 1996); Dillon v. Frank, 1992 U.S. App. LEXIS 766 (6th Cir. 1992); Ulane v. Eastern Airlines, Inc., 742 F.2d 1081, 1086-87 (7th Cir. 1984); Williamson v. A.G. Edwards & Sons, Inc., 876 F.2d 69, 70 (8th Cir. 1989); DeSantis v. Pacific Tel. & Tel. Co., 608 F.2d 327, 331-32 (9th Cir. 1979); Fredette v. BVP Management Assocs., 112 F.3d 1503, 1510 (11th Cir. 1997); Smith v. Mazvekiewicz, 2010 WL 3191894, at *2 (W.D. Pa. Aug. 11, 2010).

Moreover, Plaintiff has not indicated that he was treated differently from similarly situated individuals and, even if he had, that there was no rational basis for any difference in treatment.  Indeed, as discussed above, Plaintiff's allegations relating to alleged teasing based upon his sexual orientation do not give rise to a constitutional claim, and, according to his own pleadings, Defendants' placement of a screen in front of Plaintiff's cell was to ensure that his fellow inmates showered after a scabies outbreak and was otherwise sustainable under rational basis review based

upon legitimate safety-related concerns.[8]  Accordingly, Plaintiff fails to plead a facially plausible equal protection claim.  See City of Cleburne, 473 U.S. at 439; Village of Willowbrook, 528 U.S. at 564.

IV.     **LEAVE TO AMEND**

Ordinarily, the plaintiff may be granted "leave [to amend,] . . . when justice so requires." See Foman v. Davis, 371 U.S. 178, 182 (1962); accord Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993).  Indeed, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep . . . may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."  Foman, 371 U.S. at 182-83. However, "[a]llowing leave to amend where there is a stark absence of any suggestion by the plaintiffs [may] cure the defects in the pleadings . . . would frustrate Congress's objective in enacting this statute of provid[ing] a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis." Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp., 394 F.3d 126, 164 (3d Cir. 2004) (internal quotation marks and citation omitted).

Here, Plaintiff's claims must be dismissed with prejudice because allowing leave to amend would necessarily be futile.  Indeed, in light of the nature of his claims and the standards and reasoning set forth above, there is no conceivable basis upon which any of Plaintiff's could be cured by repleading.  See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)(dismissal with

---

[8] For example, both health concerns related to the outbreak and safety concerns related to the potential of violence or conflict.  See Malmed v. Thornburgh, 621 F.2d 565, 569 (3d Cir. 1980) (rational basis review allows a court to hypothesize reasons for disparate treatment); accord Ramsgate Court Townhome Ass'n v. West Chester Borough, 313 F.3d 157, 160 (3d Cir. 2002).

prejudice is appropriate if amendment would be inequitable or futile). Accordingly, Plaintiff's Complaint is dismissed with prejudice at this time.

## V.  CONCLUSION

For the reasons expressed in this Opinion, Plaintiff's application to proceed in this matter in forma pauperis will be granted. In light of Plaintiff's status as a civilly committed individual or a person released from confinement, no filing fee will be assessed. The Clerk will be directed to file the Complaint. The Complaint will be dismissed with prejudice.

An appropriate Order accompanies this Opinion.

   /s/ JOEL A. PISANO
**JOEL A. PISANO,**
**United States District Judge**

Dated: February 29, 2012